IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REBA SQUIRES                                                                                           PLAINTIFF

        v.                              Civil No. 07-5096

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      Plaintiff, Reba Squires, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to §§ 216(i) and 223 of Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### Procedural Background

      The plaintiff filed her applications for DIB and SSI on July 15, 2004, alleging an amended onset date of February 3, 2004, due to a lower back injury, depressive disorder, anxiety-related disorder, personality disorder, and borderline personality disorder. (Tr. 197-203). An administrative hearing was held on February 14, 2006. (Tr. 33-36, 41-45). Plaintiff was present and represented by a non-attorney. (Tr. 235-240).

      At this time, plaintiff was 58 years old and possessed a high school education and three years of college credit. (Tr. 67, 72, 103-106, 214-219). Records indicate that she had past work experience ("PRW") as a hospice caregiver and real estate salesperson.

**AO72A**
**(Rev. 8/82)**

On May 26, 2006, the Administrative Law Judge ("ALJ") entered a written opinion concluding that plaintiff's depressive disorder, anxiety-related disorder, personality disorder, and borderline personality disorder constituted severe impairments, but that these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, prior to March 1, 2001. (Tr. 12-13). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform heavy exertional level work. From a mental standpoint, the ALJ emphasized plaintiff's Global Assessment of Functioning ("GAF") score of 62, which was indicative of mild to moderate symptoms, and concluded that plaintiff functioned pretty well with some meaningful interpersonal relationships. (Tr. 13). With the assistance of a vocational expert, the ALJ then determined that plaintiff could return to her PRW as a hospice care giver or a real estate salesperson, as these positions did not require the performance of work-related activities precluded by her RFC. (Tr. 15-16).

The plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on May 21, 2007. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 8, 9).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

2

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

3

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Evidence Presented**

On February 3, 2004, plaintiff was treated at the Northwest Arkansas Free Health Clinic ("NWAFHC") due to exhaustion and frequent urination. (Tr. 124, 185). Because her sister was diabetic, plaintiff requested a blood glucose test for herself. The doctor diagnosed her with fatigue and ordered lab tests. (Tr. 124, 185).

On February 10, 2004, plaintiff was reportedly sleeping all the time and experiencing depression. (Tr. 122, 183). She was also experiencing feelings of guilt and hatred. The doctor noted that she had lost her will to live. Plaintiff was diagnosed with depression, and told to return in one week. The doctor noted plaintiff's history of childhood abuse. (Tr. 122, 183).

On February 16, 2004, plaintiff was prescribed Prozac. (Tr. 121, 182). She again voiced complaints of low energy. The doctor diagnosed her with anxiety/depression. (Tr. 121, 182). Plaintiff also received refills of Prozac on August 5, 2004, February 9, 2005, and October 12, 2005. (Tr. 119).

On September 1, 2004, was evaluated by Kim Davis, a counselor with Ozark Guidance Center ("OGC"). (Tr. 128). Plaintiff stated that she had been suicidal since witnessing another person commit suicide 8 years prior. She reported a lack of enthusiasm and no zest for life. Plaintiff indicated that she had written suicide letters in the past, all of which centered around

4

her belief that her ex-husband had sexually abused her daughter. Plaintiff entered into a no harm contract and voiced no current plan or intent to harm herself or others. (Tr. 128). Her diagnosis was borderline personality disorder, and she was assessed with a GAF of 45. (Tr. 129).

Plaintiff was hospitalized from September 6, 2004, until September 9, 2004, due to suicidal ideations. (Tr. 155-162). She reported experiencing suicidal episodes on multiple occasions. Plaintiff had considered gassing herself in the garage and hanging herself from a rafter. She indicated that she had "just felt tired for the past five or six years and [had] these sudden thoughts of suicide." Plaintiff stated that she had been prescribed Prozac in the past, but had stopped taking it approximately 1 month prior, because it muted her affect. Dr. Larry Tuttle assessed her with fairly impulsive thoughts of suicide and prescribed Lexapro and Klonopin. He also noted that she might well need to be on psychotropic medication. (Tr. 158).

On September 10, 2004, plaintiff returned to OGC. (Tr. 125-127, 171-73). Plaintiff stated that she had renewed energy after getting out of the hospital. She also described herself as "a totally different person" when she was teaching yoga. Plaintiff told Ms. Davis that the doctor in the hospital had changed her medication from Prozac to Lexapro but failed to give her samples or a prescription. As such, plaintiff was advised to return to the doctor who had originally prescribed the Prozac. Ms. Davis noted that plaintiff had "mixed progress," and wanted to focus on her borderline personality disorder during her next scheduled appointment. (Tr. 126, 172).

On September 16, 2004, plaintiff was evaluated by Dr. Scott McCarty at the Center for Stress Reduction. (Tr. 130-33). Her psychiatric history reportedly involved a hospitalization in 2004 for a panic attack and exhaustion, outpatient treatment from 1995-1999 in Oklahoma as

5

part of an incest survivor's group, and counseling at OGC which she began in 2004. Plaintiff also reported a history of experiencing panic attacks while working around others, which she stated was the reason for her self employment over the previous 10-15 years. (Tr. 133). However, she was able to drive, shop, use a checkbook, make change, and perform household chores without help or supervision. Socially, plaintiff stated that she had enjoyed excellent academic relationships with teachers and classmates and described herself as "poplar." Dr. McCarty diagnosed plaintiff with anxiety disorder not otherwise specified rule out bipolar II disorder and histrionic traits. He assessed her with a GAF of 62, and noted that her prognosis was good with the continuation of her self-initiated outpatient treatment and mediation management. (Tr. 132). Dr. McCarty also indicated that plaintiff was open and forthcoming, and there was no evidence of malingering or exaggeration in her accounts. (Tr. 133). He indicated that plaintiff appeared quite capable of remembering, understanding, and carrying out instructions; was dramatically friendly; was oriented to time, person, and place; had intact memory; possessed an estimated I.Q. of 80 or greater; exhibited good concentration and persistence; and, had a somewhat pressured pace.

       Plaintiff sought counseling at OGC three times after October 12, 2004. (Tr. 211, 231-32). Counselors at Ozark actively prescribed Prozac to calm her symptoms of depression. (Tr. 13, 91, 115, 119, 190, 192, 226). They also recommended that she attend group counseling for her borderline personality disorder. (Tr. 212-13). At the time of her hearing, plaintiff was actively participating in group counseling. (Tr. 212-13). Her most recent appointment had been three or four weeks prior to her hearing. (Tr. 231). When asked why she voluntarily stopped seeing counselors at OGC in 2004, plaintiff indicated that she could not afford to pay for the services.

6

(Tr. 231). She also had to cease treatments after her hospitalization to care for a daughter who was diagnosed with cancer. (Tr. 189).

Plaintiff was discharged from OGC on November 23, 2004, due to "loss of client contact." (Tr. 170). The discharge report prepared by OGC noted that plaintiff had a GAF of 45 with a fair prognosis. The summary further noted that plaintiff had made no progress regarding her clinical diagnosis of depression and borderline personality disorder, and that future readmission was recommended. (Tr. 170).

On October 12, 2005, plaintiff returned to NWAFHC. (Tr. 177). Records indicate that her sleep patterns had improved, and she was feeling and eating better. The doctor noted an appropriate affect and diagnosed plaintiff with improving depression. He prescribed Prozac. (Tr. 177).

Plaintiff later underwent a diagnostic interview at OGC on January 12, 2006. (Tr. 112, 189-92). At that time, she voiced "some ongoing anxiety upon awakening, bad dreams, [and] a loss of appetite." (Tr. 189). Plaintiff admitted that she was afraid of getting depressed again. (Tr. 189). Although she continued to experience suicidal thoughts "now and again," plaintiff reported no plan to act on those thoughts. She indicated that she would have been more consisted with her treatment following her hospitalization, but she had been caring for a daughter who had been diagnosed with cancer. (Tr. 189). When reflecting on that time period, plaintiff said, "thank God I was on Prozac." Plaintiff was diagnosed with depressive disorder not otherwise specified, phase of life problems and problems related to her social environment, and other psychological and environmental problems. The examiner also assessed her with a GAF

of 60. (Tr. 191-92). At the conclusion of the diagnostic interview, Ozark referred plaintiff for individual therapy and future group therapy to be determined by her therapist. (Tr. 192).

**Discussion**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff contends that the ALJ disregarded her mental "impairments associated with her depressive syndrome, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, thoughts of suicide, manic syndrome, pressured speech, decreased need for

8

sleep, and easy distractibility." (Tr. 66, 90-91). We note, however, that the ALJ did conclude that plaintiff's depressive disorder, anxiety-related disorder, personality disorder, and borderline personality disorder constituted severe mental impairments. Further, as the "impairments" alleged by plaintiff are actually symptoms of her depression, anxiety, and personality disorders, we cannot say that the ALJ erred in failing to specifically list each of her symptoms and concluded that each symptom was severe. A finding that her diagnoses were severe was sufficient.

We also note that the records does not show that plaintiff has consistently sought treatment for these mental impairments. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Aside from one hospitalization for suicidal ideation, plaintiff has received only conservative treatment for her condition, namely exercise, increased sleep, and muscle relaxers. *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). Plaintiff was prescribed also Prozac, which seemed to improve her condition, but plaintiff discontinued the medication on her own after taking it for only three months. The medication was later resumed, and plaintiff has indicated that it does help alleviate some of her symptoms.

Plaintiff's alleged physical impairments also lack sufficient evidence of record to support a finding of disability. In her application paperwork, plaintiff complained of headaches for which she took Ibuprofen on an as needed basis. (Tr. 82-83). *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain

9

However, the medical records do not indicate that plaintiff was consistently treated for this condition. *See Edwards v. Barnhart*, 314 F.3d at 967. There is also no indication in the record that plaintiff's treating doctors have given her any permanent activity restrictions. *See Baldwin v. Barnhart*, 349 F.3d 549, 557 (8th Cir. 2003) (noting none of plaintiff's independent physicians restricted or limited her activities).

Plaintiff contends that her failure to seek more consistent treatment should be excused by her financial situation. However, plaintiff's attempts to excuse her failure to pursue more aggressive treatment cannot be wholly excused due to her claims of financial hardship. There is nothing in the record to indicate that she sought out low-cost medical or mental health care. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted).

Perhaps most compelling, though, is the fact that plaintiff has worked since her alleged onset date. At the time of the administrative hearing, plaintiff was working as an on-sight apartment leasing agent, pursuant to a free apartment rental arrangement. (Tr. 224). Her duties were said to include leasing apartments (on the phone and in person), showing the apartments to perspective renters, handling rent monies, checking over all the properties, and making small repairs like painting. (Tr. 228-29, 235). Plaintiff stated that she was able to handle these duties because she "can do it at [her] own pace, at [her] own time…It's a very fluid position for [her],

10

so [as to] accommodate for any exhaustion or memory loss or whatever. It just takes [her] extra time to do everything." (Tr. 234). Plaintiff testified that the rental value of her apartment is $350.00 a month, and because she uses her own vehicle and gas to check on the other properties, she is paid $ 400.00 per month. (Tr.229-30). Plaintiff testified that she also works on a part-time basis as a yoga instructor, making $90.00 every two weeks. (Tr. 228). Between the two jobs, plaintiff works between ten to fifteen hours a week. (Tr. 235). Although this work may not have risen to the level of substantial gainful activity ("SGA"), we do believe that it evidences plaintiff's ability to perform some level of work-related activity on a daily basis. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to determine whether or not you have the ability to engage in substantial gainful activity."). Therefore, it was proper for the ALJ to consider this in his analysis of plaintiff's subjective complaints.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. She reportedly led a busy life as an active yoga instructor, caring for her grandchildren weekly, and working in property management. (Tr. 14-15, 60-64, 90, 117, 130-131, 194, 227-230, 234-235). Plaintiff also indicated that she could care for her personal hygiene, prepare meals (cook from scratch and bake bread), drive, shop in stores, pay bills, count change, handle a savings account, use a checkbook/money orders, and spend time with others. (Tr. 84-85). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*,

11

72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, this level of activity is inconsistent with a finding of disability.

Therefore, although it is clear that plaintiff suffers from some degree of impairment, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Next, we consider the ALJ's determination that plaintiff can perform work at all levels of exertion, limited only by mild to moderate mental limitations. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per

12

curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and her medical records. On October 12, 2004, Dr. Brad Williams, a non-examining psychologist, completed a mental RFC assessment and a psychiatric review technique form. (Tr. 134-153). After reviewing plaintiff's medical records, Dr. Williams determined that plaintiff was moderately limited in the areas of maintaining attention and concentration for extended periods of time; completing a normal workday or workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; setting realistic goals; and, making plans independently of others. (Tr. 134-135). However, he noted no episodes of decompensation. (Tr. 148).

In September 2004, Dr. McCarty also concluded that plaintiff was quite capable of remembering, understanding, and carrying out instructions; was dramatically friendly; was oriented to time, person, and place; had intact memory; possessed an estimated I.Q. of 80 or

13

greater; exhibited good concentration and persistence; and, had a somewhat pressured pace. (Tr. 133). Further, she was most recently assessed with a GAF of 60-62, which is indicative of only mild to moderate symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). Based on this evidence, we believe that the ALJ's RFC assessment is supported by substantial evidence. Although plaintiff does have some mild to moderate limitations, the record makes clear that she remains capable of performing work-related activities. In fact, plaintiff's continued work, even after her alleged onset date, evidences her ability to perform work-related activities and deal with others. There is no evidence to suggest that plaintiff's limitations are marked, as she alleges. Therefore, we find that substantial evidence supports the ALJ's RFC determination.

We also find that substantial evidence supports the ALJ's finding that plaintiff can return to her PRW. In response to a question presented by the ALJ involving a hypothetical claimant of the same age, vital statistics and educational background as plaintiff, who had no significant exertional limitations, and a GAF of 62, indicating mild symptoms, the VE opined that such an individual would be able to perform all of plaintiff's PRW. (Tr. 237-39). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

Plaintiff contends that the ALJ committed reversible error when relying on the VE's testimony because the VE failed to assign a Dictionary of Occupational Titles (hereinafter "DOT") code to plaintiff's PRW. The regulations specifically permit "a vocational expert or specialist to offer expert opinion testimony in response to a hypothetical question about whether

14

a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(a)(2) and 416.960(a)(2). SSR 00-4p identifies situations when Agency adjudicators may not rely on vocational expert testimony. However, the vocational expert's failure to provide DOT codes for the claimant's past relevant work, when responding to a hypothetical question at step four, is not such a situation. *See* SSR 00-4p (Use of Vocational Expert and Vocational Specialist Evidence, And Other Reliable Occupational Information in Disability Decisions). Therefore, the ALJ's reliance on the VE's testimony was not reversible error.

Plaintiff also argues that the ALJ error in concluding that she could return to work at a heavier exertional level than she had ever performed in the past. We note, however, that the VE was present throughout the hearing and heard the plaintiff's description of her PRW as a caregiver. (Tr. 209, 216-217, 236-237). Plaintiff explained that this job required her to serve as a companion and furnish any necessary care to her clients, such as feeding and bathing them. She spent about forty percent of her time standing and walking, and the job required her to pick up the client if he/she fell. (Tr. 217). It is clear that the VE merely categorized the caregiver job based on plaintiff's own description of the position, which would qualify the job as heavy work. (Tr. 217, 237). *See* 20 C.F.R. §§ 404.1567(d) and 416.967(d) (Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds); *Evans v. Shalala*, 21 F.3d 832, 833-34 (8th Cir. 1994) (the Commissioner will find a claimant "not disabled" if she can perform the actual functional demands of her past relevant

15

work, or the functional demands and job duties of the occupation as it is generally performed in the national economy); SSR 82-61; U.S. Dep't of Labor, *DOT* 257 (4th ed. 1991).

Further, plaintiff contends that the ALJ failed to consider her age when determining that she could return to her PRW. The Commissioner considers vocational factors such as a claimant's skills and age only at step five in the sequential evaluation process. (Tr. 11-12). *See* 20 C.F.R. §§ 404.1520(g)(1) and 416.920(g)(1) (explaining step five in the sequential evaluation process where the claimant's impairments must prevent her from making an adjustment to any other work); 20 C.F.R. §§ 404.1563(a) and 416.963(a) ("When we decide whether you are disabled under 404.1520(g)(1), we will consider your chronological age in combination with your residual functional capacity, education, and work experience"); 20 C.F.R. §§ 404.1568 and 416.968 (explaining that the Commissioner considers a claimant to have skills than can be use in other jobs (transferability), when the skilled or semi-skilled work activities the claimant did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work); SSR 82-61. Because the ALJ stopped at step four, the regulations did not require the ALJ to consider her age or whether she had skills that could be transferred to other jobs. *Id.*

It is also important to note that plaintiff plaintiff performed the caregiver job in 2002, after she attained the age of 55 and became a "person of advanced age." (Tr. 51-52, 55, 59, 197, 200, 214); 20 C.F.R. §§ 404.1563(d) and 416.963(d) (explaining that a "person of advanced age" is age 55 or older). As such, the fact that she is now 58 would not change the outcome of her case.

AO72A
(Rev. 8/82)

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections ay result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of March 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)